```
            IN THE UNITED STATES DISTRICT COURT
          FOR THE EASTERN DISTRICT OF PENNSYLVANIA


LIVE FACE ON WEB, LLC,          :
                                :
            Plaintiff,          :   No. 15-CV-01306
    vs.                         :
                                :
                                :
THE CONTROL GROUP MEDIA         :
COMPANY, INC., et al.           :
                                :
            Defendants.         :
```

**MEMORANDUM AND ORDER**

**JOYNER, J.**                                           **December 10, 2015**

Before the Court are Defendants' Motion to Dismiss (Doc. No. 19), Plaintiff's Response in Opposition thereto (Doc. No. 20), Defendants' Reply Brief in Support of Defendants' Motion to Dismiss (Doc. No. 22) and Plaintiff's Sur-Reply in Support of its Response in Opposition to the Motion to Dismiss (Doc. No. 26). For the reasons that follow, the Motion to Dismiss is GRANTED in part and DENIED in part.

## I. Background

Plaintiff Live Face on Web, LLC ("LFOW") is the developer and owner of "live person" software and a copyright-protected video technology program and video presentation, (the "LFOW package") which allows the display of a "walking and talking" personal host who introduces a website to an online visitor and

who can then be configured to explain a company's products and/or services and to direct the visitor's attention to a particular product or aspect of the website. (Am. Compl., ¶s 11-13). Defendants The Control Group Media Company, Inc., ("TCG") Instant Check Mate, LLC ("ICM-LLC") and Instant Checkmate, Inc. ("ICI") own and operate web sites that enable searches of peoples' criminal records, address history, and other public records, including, among others, www.instantcheckmate.com, www.unitedstatesbackgroundchecks.com and www.uspeoplerecords.com. (Am. Compl., ¶ 7). Specifically, each LFOW package consists of three parts, all of which are copyright protected in some form or fashion: (1) the video presentation of the spokesperson; (2) the LFOW software; and (3) the LFOW video player. (Am. Compl., ¶s 16 - 20).

In 2011, ICM-LLC and TCG purchased some thirteen customized versions of the LFOW Package for "marketing, advertising and sales purposes" and in so doing became bound to the terms and conditions of LFOW's End User License Agreement ("EULA"). (Am. Compl., ¶s 22-25). The EULA provided, in relevant part, that without obtaining express permission and paying additional fees, an LFOW software package could be used on only one URL[1] and could not be assigned, sub-licensed or transferred by a licensee. (Am.

---

[1] "URL" is an acronym for Uniform Resource Locator and is a reference (or address) to a resource on the Internet. See, e.g., https://docs.oracle.com/javase/tutorial/networking/urls/definition.html.

Compl., ¶s 28-30).

According to the Amended Complaint, TCG was pleased with the performance of LFOW's technology, purportedly acknowledging that the subject software packages increased its client conversation rates and sales by 12%. (Am. Compl., ¶ 27). In contravention of the terms of the EULA, however, Plaintiff alleges that "the Defendants and their affiliates created, used and/or shut down numerous entities under the name 'Instant Checkmate' and 'Control Group' or similar names for their own business and legal purposes, and transferred assets (including rights to the LFOW Subject Software Packages) ... without obtaining the necessary consent or authorization from LFOW under the EULAs and in violation of LFOW's copyrights and applicable law." (Am. Compl., ¶ 34). The Amended Complaint further avers that "Defendants unlawfully displayed all or some of the LFOW Subject Software Packages on two or more URLs in violation of the EULA and applicable law, and without authorization from, or payment of applicable fees to, LFOW." (Am. Compl., ¶37).

On November 28, 2014, Plaintiff's legal counsel sent a letter to TCG asserting that it had recently discovered that TCG had breached the End User License Agreement for the LFOW Package and infringed on Live Face's intellectual property rights by improperly using its Software Product No. 100004468 on multiple URLs including (i) instantcheckmate.com/register and (ii)

uspeoplerecords.com/register. (Am. Compl., Ex. G). Live Face also averred that Defendants violated the EULA by entering into a civil settlement with the Federal Trade Commission ("FTC") following its investigation of Instant Checkmate for illegally preparing "consumer reports." See, U.S. v. Instant Checkmate, Inc., No. 14-CV-0675 (S.D. Cal. Mar. 28, 2014).[2] In this letter, Plaintiff demanded that Defendants immediately and permanently cease and desist from continuing the unauthorized use and distribution of the LFOW products and produce a cache of information to enable Plaintiff to ascertain the full extent and nature of the damages which it had suffered as a result of Defendants' purportedly unauthorized activities, such as a listing of all URLs on which the LFOW package had been used or made accessible, the names, IP addresses and other identifying information about the website visitors who viewed the LFOW products and a detailed summary of all revenues and profits generated by the TCG Parties and their affiliates as a result of the allegedly unauthorized use of the package(s). (Am. Compl., Exhibit "G").

Defendants responded through counsel to the November 28, 2014 letter via correspondence dated December 8, 2014 denying the allegations of improper use and EULA violations. Apparently the

---

[2] A copy of this determination is also available at the following link: https://www.ftc.gov/system/files/documents/cases/140409instantcheckmateorder.pdf).

parties were unable to resolve this dispute without filing suit and, on March 13, 2015, Live Face filed a complaint alleging breach of contract, direct copyright infringement, vicarious copyright infringement, contributory copyright infringement, inducement of copyright infringement, and unjust enrichment.  In response to a timely filed motion to dismiss, Plaintiff filed an Amended Complaint on June 2, 2015, dropping its claim for unjust enrichment.  By way of the motion now before us, Defendants likewise seek dismissal of the Amended Complaint in its entirety.

## II. Standard of Review

Generally speaking, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)); Ethypharm S.A. Fr. v. Abbot Labs., 707 F.3d 223, 231 n. 14 (3d Cir. 2013) (quoting Sheridan v. NGK Metals Corp., 609 F.3d 239, 262, n. 27 (3d Cir. 2010)).  Indeed, it has been said that the touchstone of the pleading standard is plausibility and that a claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  Iqbal, supra; Bistrian v. Levi, 696 F.3d 352, 365 (3d. Cir. 2012).

Thus, "[t]hreadbare" recitations of the elements of a claim supported only by "conclusory statements" will not suffice. <u>Iqbal</u>, <u>supra</u>. Rather, a plaintiff must allege some facts to raise the allegation above the level of mere speculation. <u>Great Western Mining & Mineral Co. v. Fox Rothschild LLP</u>, 615 F.3d 159, 176 (3d Cir. 2010) (citing <u>Twombly</u>, 550 U.S. at 555).

"Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." <u>Twombly</u>, 550 U.S. at 563. To resolve a 12(b)(6) motion, a court may properly look at public records, including judicial proceedings, in addition to the allegations in the complaint and the exhibits attached to the complaint. <u>Schmidt v. Skolas</u>, 770 F.3d 241, 249 (3d Cir. 2014); <u>S. Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Group Ltd.</u>, 181 F.3d 410, 426 (3d Cir. 1999).

In applying these principles, the Third Circuit has said that a court should take the following three steps in analyzing the sufficiency of a complaint. First, it should "take note of the elements a plaintiff must plead to state a claim." Second, the court should "identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth." Third and finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine if they plausibly give rise to an entitlement to

6

relief." Santiago v. Warminster Twp., 629 F.3d 121 (3d Cir. 2010) (quoting Iqbal, 556 U.S. at 675, 679).

### III. Discussion

As noted, Plaintiff's Amended Complaint contains four counts asserting claims for direct copyright infringement (Count I), contributory/vicarious copyright infringement (Count II), inducing copyright infringement (Count III) and breach of contract (Count IV).  Defendants contend that Plaintiff has failed to plead facts in support of the essential elements of its purported claims, that its averments based "upon information and belief" are insufficient, and that the plain terms of the licensing agreements defeat Plaintiff's claims that Defendants breached the licensing agreements by using the LFOW software on multiple URLs.  We address these arguments with regard to each claim, *seriatim.*

    **A.  Copyright Infringement in General**

"The Copyright Act grants the copyright holder 'exclusive' rights to use and to authorize the use of his work in five qualified ways, including reproduction of the copyrighted work in copies." Sony Corp. v. Universal City Studios, 464 U.S. 417, 432-433, 104 S. Ct. 774, 784, 78 L. Ed. 2d 574 (1984); Costar Group, Inc. v. Loopnet, Inc., 373 F.3d 544, 549 (4th Cir. 2004). "Anyone who violates any of the exclusive rights of the copyright owner by using or authorizing the use of the copyrighted work in

one of the five ways set forth in the statute is an infringer of the copyright." Id,(citing 17 U.S.C. §501(a)). See also, Teleprompter Corp. v. Columbia Broadcasting System, Inc., 415 U.S. 394, 398, n. 2, 94 S. Ct. 1129, 1133, n. 2, 39 L. Ed. 2d 415 (1974)(*superceded by statute on other grounds as stated in* Capital Cities Cable, Inc. v. Crisp, 467 U.S. 691, 709, 104 S. Ct. 2694, 2705, 81 L. Ed. 2d 580 (1984)(citing 1 M. Nimmer, *Copyright* §100, p. 376 (1973)). To establish infringement, two elements must be proven: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original. Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 361, 111 S. Ct. 1282, 113 L. Ed. 2d 358(1991).

Insofar as "[c]opying refers to the act of infringing any of the copyright owner's five exclusive rights set forth at 17 U.S.C. § 106 including the rights to distribute and reproduce copyrighted material," ... "[i]t may be demonstrated by showing that the defendant had access to the copyrighted work and that the original and allegedly infringing work share substantial similarities." Kay Berry, Inc. v. Taylor Gifts, 421 F.3d 199, 207-208 (3d Cir. 2005); Dun & Bradstreet Software Servs., Inc. v. Grace Consulting, Inc., 307 F.3d 197 (3d Cir. 2002).

"To survive a motion to dismiss, a complaint alleging copyright infringement must allege: '(1) which specific original works are the subject of the copyright claim; (2) that the

plaintiff owns the copyrights in those works; (3) that the works in question have been registered with the Copyright Office in accordance with the statute; and (4) by what acts and during what time the defendant infringed the copyright.'" Quadratec, Inc. v. Turn 5, Inc., Civ. A. No. 13-6384, 2015 U.S. Dist. LEXIS 107071 at *9 - *10 (E.D. Pa. Aug. 13, 2015)(quoting EEOC v. Vanguard Group, No. 04-4126, 2006 U.S. Dist. LEXIS 17935 at *12 (E.D. Pa. Apr. 7, 2006)).  Thus, for example, "[b]ecause the use of computer software typically involves the reproduction of computer code by the user's machine, an owner adequately alleges copying when he asserts facts from which it would be plausible to conclude that a licensee continued to use copyrighted software after the license expired."  Levey v. Brownstone Inv. Grp, LLC, No. 13-3251, 590 Fed. Appx. 132, 135-36 (3d Cir. Oct. 23, 2014).  See also Bradshaw v. American Institute for History Educ., No. 12-1367, 2013 U.S. Dist. LEXIS 34566 (D. N.J. Mar. 13, 2013) (finding that plaintiff had pleaded sufficient facts for copyright infringement by presenting a "correlation chart" specifying the manner of infringement, in addition to its complaint).

    **B.  Direct Copyright Infringement**

    Generally speaking, a defendant may be found liable for copyright infringement on a direct or contributory theory of liability.  Star Pacific Corp. v. Star Atlantic Corp., 574 Fed.

Appx. 225, 230 (3d Cir. Aug. 6, 2014). Direct copyright infringement requires, in addition to the threshold two elements, a showing of volitional conduct - "specifically, the act constituting infringement" - by the defendant himself. Star Pacific, supra,(quoting CoStar Group, Inc. v. LoopNet, Inc., 373 F.3d 544, 551 (4th Cir. 2004)).

Here, Defendants do not appear to be challenging the Plaintiff's ownership of a valid copyright in this matter, but attack instead the second threshold requirement - copying. More particularly, Defendants argue that Plaintiff has failed to sufficiently plead facts to support its theory that Defendants breached the licensing agreements (the EULAs), thereby automatically terminating the licenses with the result that Defendants' continued use of Plaintiff's technology is unlawful copying. First, Defendants argue that Article 7.1 of the EULA only allows for deactivating the LFOW Package "to the extent of such prohibited use" or automatically charging "additional license fees for any use in excess of the permitted use." (Motion to Dismiss, Doc. No. 19, p. 19). In effect, Defendants argue that no copyright infringement could have occurred because Plaintiff did not have the right to revoke the license to begin with. We find this argument unpersuasive.

For one, a reading of the Amended Complaint reveals that it alleges sufficient facts to plead viable claims for direct

copyright infringement.  Specifically, Plaintiff avers that it is the developer and owner of the "live person" software, that it has registered each version of its video presentations, software and video player with the U.S. Copyright office, that it only licenses the rights to use these software packages to its customers pursuant to its EULAs, which provide in relevant part that an LFOW subject software package can only be used on one URL and that a licensee may not assign, sublicense or transfer the subject software packages to any person or entity without Plaintiff's express written consent.  (Am. Compl., ¶s11, 15, 16, 20, 21, 28, 29).  The Amended Complaint further avers that "under the EULA, a sale of all or substantially all of the assets or equity securities of an entity, a merger, conversion or similar entity/corporate reorganization or change would constitute a 'transfer' or 'assignment' within the meaning of the EULA for which consent or authorization from LFOW would be required," and that Article 12 of the EULA provides that a license to the subject software package terminates immediately without notice from Plaintiff in the event that a licensee fails to comply with any provision of the agreement.  (Am. Compl., ¶s 30, 33). Additionally, the Amended Complaint includes allegations to the effect that Defendants unlawfully displayed all or some of the software packages on two or more URLs without authorization and misused some or all of the subject software packages to

11

unlawfully market, advertise, and sell credit report services, and that through the use of Defendants' websites, Defendants continued to unlawfully use, distribute, execute, display and/or cause others to unlawfully use, distribute, execute and display the LFOW subject software packages by loading them onto/into the random access memory of their website visitors and customers' computers or devices. (Am. Compl., ¶s 37-38, 41, 47-49). Thus we find that sufficient facts are alleged to make out the pre-requisite averments of unauthorized copying and volitional conduct necessary to plead a cause of action for direct infringement.

Morever, even reading the contract as narrowly as Defendants urge, we find that this Count withstands the instant motion. To be sure, Article 7.1 states that Plaintiff "shall be permitted" to deactivate the LFOW Package or charge more fees; it does not say it is compelled to do so. (Am. Compl., Ex. D Art. 7.1). Article 12.2, by contrast, is more emphatic: the EULA "shall terminate immediately, without notice," if, in relevant part, the licensee "fail[s] to comply with any provision of this EULA." (Doc. No. 16 Ex. D Art. 12.2). As such, the EULA allows for revoking the license in the event of breach of contract.

Second, Defendants argue that Live Face waived its right to sue Defendants for copyright infringement when it granted a nonexclusive license to use the LFOW Package, relying on <u>Netbula,</u>

LLC v. BindView Dev. Corp., 516 F. Supp. 2d 1137, 1150-51 (N.D. Cal. 2007). Defendants' reliance on Netbula is misplaced. The Third Circuit has held that "a nonexclusive license does not transfer ownership of the copyright from the licensor to the licensee, [and] the licensor can still bring suit for copyright infringement if the licensee's use goes beyond the scope of the nonexclusive license." MacLean Associates, Inc. v. Wm. M. Mercer-Meidinger-Hanseon, Inc., 952 F.2d 769, 779 (3d Cir. 1991). See Also, Cincom Systems, Inc. v. Novelis Corp., 581 F.3d 431 (6th Cir. 2009) (finding that defendant's transfer of a license to a surviving corporation was a breach of the express terms of a license that infringed the plaintiff's copyright); Grant Heilman Photography, Inc. v. John Wiley & Sons, Inc., 864 F. Supp. 2d 316, 325 (E.D. Pa. 2012) ("When a licensee exceeds the scope of a license granted by the copyright holder, the licensee is liable for infringement."). Because Live Face has alleged that TCG breached the EULA either by using the LFOW Package to violate applicable law or by using it on websites outside the scope of the EULA, Live Face has stated a claim for direct copyright infringement. We therefore deny the motion to dismiss with respect to Count I of the Amended Complaint.

    **C. Vicarious Copyright Infringement**.

"To state a claim of vicarious copyright infringement, a plaintiff must allege (1) direct copyright infringement by a

third party; (2) an obvious and direct financial interest in the exploitation of copyrighted materials; and (3) the right and ability to supervise the infringing activity." Live Face on Web, LLC v. Howard Stern Prods., Inc., 2009 WL 723481, at *3 (E.D. Pa. Mar. 17, 2009). Stated otherwise, "in order to state a cause of action for contributory and vicarious infringement, a plaintiff must identify another party who was responsible for the direct infringement (to which the defendant contributed in some way)." Gordon v. Pearson Educ., Inc., Civ. A. No. 14-2329, 2015 U.S. Dist. LEXIS 2343, at *16 (E.D. Pa. Jan. 9, 2015) (quoting Leonard v. Stemtech Health Scis., Inc., Civ. A. No. 08-67, 2013 U.S. Dist. LEXIS 134623 (D. Del. Sept. 19, 2013)).

In the Amended Complaint at issue here and in addition to the averments supporting direct infringement, Plaintiff further alleges that visitors to the Defendants' web sites download and execute the LFOW Package, including in their computers' random access memory ("RAM"). (Doc. No. 16 ¶ 18 and 44). Although temporary, "the loading of software into [a computer's] RAM creates a copy under the Copyright Act." Mai Systems Corp. v. Peak Computer, Inc., 991 F.2d 511, 519 (9th Cir. 1993). A visitor to one of Defendants' web pages featuring the LFOW Package would therefore download a copy into his computer's RAM, thereby infringing the LFOW Package copyright. Cf. Gordon, 2015 WL 132415, at *6 (finding that plaintiff had plausibly alleged

14

third-party infringement by stating, "upon information and belief," that defendant had distributed copies of photographs to third parties that had then gone on to reproduce those copies without authorization). Plaintiff also contends that the defendants "had the right and ability to monitor, control, direct, supervise and limit the infringing conduct and activities that occurs through their computer systems and websites," yet made "no attempt to stop or limit the infringing conduct... by their website visitors..." (Am. Compl., ¶s 49-50). Indeed, it is clearly plausible that a website owner such as TCG would have the right and ability to supervise the operation of its own website. See, Live Face on Web, LLC v. Emerson Cleaners, Inc., 66 F. Supp. 3d 551 (D. N.J. 2014); Howard Stern, 2009 WL 723481, at *3.

In addition, it has been said that "'[f]inancial benefit exists where the availability of infringing material acts as a draw for customers. ... There is no requirement that the draw be substantial.'" Parker v. Google, Inc., No. 06-3074, 242 Fed. Appx. 833, 837, 2007 U.S. App. LEXIS 16370 at *10 (3d Cir. July 10, 2007)(quoting Ellison v. Robertson, 357 F.3d 1072 (9th Cir. 2004). Because the LFOW Package is designed to attract customers, it creates a financial benefit, a point made in the email correspondence between the parties which was attached as a copy to the Amended Complaint. (Doc. No. 16 Ex. C). See Howard

Stern, 2009 WL 723481, at *3.  Consequently, we find that Plaintiff has pled sufficient facts to support a claim for vicarious infringement and the defendants' motion to dismiss this claim is also denied.

    **D.**    **Contributory Copyright Infringement**.

    The doctrine of contributory infringement, in turn, permits "one who, with knowledge of the infringing activity, induces, causes, or materially contributes to the infringing activity of another, to be held liable." Columbia Pictures Industries, Inc. v. Redd Horne, Inc., 749 F.2d 154, 160 (3d Cir. 1984).  Hence, in order to prevail on a claim for contributory infringement, a plaintiff has to prove: (1) direct infringement by a third party; (2) knowledge that the third party was directly infringing; and (3) material contribution to the infringement. Parker v. Google, supra,  242 Fed. Appx. at 837, 2007 U.S. App. LEXIS 16370 at *8; Leonard v. Stemtech Health Sciences, Inc., No. 08-67-LPS, 2015 U.S. Dist. LEXIS 101512, *11 (D. Del. Aug. 8, 2015).

    As noted in the discussion on vicarious infringement, Plaintiff has pleaded sufficient facts to state a claim for direct copyright infringement of a third party.  With respect to the second element - knowledge of third-party infringement, Live Face has alleged that the Plaintiff knew of this infringement since November 2014, but continued to use the LFOW Package afterwards. (Am. Compl., ¶s 44-45).  Taking the Plaintiff's

allegations as true, this likewise satisfies the pleading standard with respect to the second requirement.

The last element of the Parker test, material contribution, is strongly disputed by the parties. TCG argues that a material contribution cannot be premised "upon the mere operation of a website business," Perfect 10, Inc. v. Vista Int'l Serv. Assoc., 2004 WL 1773349, at *4 (N.D. Cal. Aug. 5, 2004), requiring instead "encourage[ment] or assist[ance in] the infringement," Flava Works, Inc. v. Gunter, 689 F.3d 754, 757 (7th Cir. 2012). In effect, TCG argues that the simple downloading of the LFOW Package onto a computer's RAM is not enough for contributory infringement. This Court agrees.

"In order to claim that [a defendant] is a contributory infringer, [a plaintiff] must allege... that [the defendant] authorized or assisted that third party." Parker v. Google, Inc., 422 F. Supp. 2d 492, 499 (E.D. Pa. 2006)(*aff'd*, 242 Fed. App'x. 833 (3d Cir. 2007)). "That 'authorization or assistance must bear some direct relationship to the infringing acts, and the person rendering such assistance or giving such authorization must be acting in concert with the infringer.'" Id. (quoting 3-12 Melville B. Nimmer & David Nimmer, Nimmer on Copyright, §12.04[A][2][a] (2005)). Although courts show much deference in pleadings for contributory infringement [see generally Gordon, 2015 WL 132415, at *4] in the internet context, the volitional

17

element is often absent. "When an ISP automatically and temporarily stores data without human intervention so that the system can operate and transmit data to its users, the necessary element of volition is missing." Parker, 422 F. Supp. 2d at 497. Visiting a web site and downloading the LFOW Package onto a computer's RAM may be a copy, but it is an automated process. Without more, we find that Plaintiff has not alleged sufficient facts to sustain this claim. See also, Wolk v. Kodak Imaging Network, Inc., 840 F. Supp. 2d 724, 750-51 (S.D. N.Y. 2012) (granting motion to dismiss in copyright suit against photo sharing website because an allegation that a defendant "'merely provid[ed] the means to accomplish an infringing activity is insufficient to establish a claim for contributory infringement.'") (quoting Livnat v. Lavi, 1998 WL 43221, at *3 (S.D. N.Y. Feb. 2, 1998), aff'd sub nom., Wolk v. Photobucket.com, Inc., 569 Fed. Appx. 51 (2d Cir. 2014)). Accordingly, Live Face has failed to state a claim for contributory copyright infringement, and the motion to dismiss this claim is granted.

**E. Inducing Copyright Infringement**

Plaintiff's claim for the inducement of copyright infringement is dismissed for the same reason as its contributory infringement claim: Live Face has not shown that TCG intended visitors to infringe on the LFOW Package copyright. To state a

claim for inducement of copyright infringement, a Plaintiff must allege "(1) the distribution of a device or product, (2) acts of infringement, (3) an object of promoting its use to infringe copyright, and (4) causation." Columbia Pictures Indus. v. Gary Fung, 710 F.3d 1020, 1032 (9th Cir. Cal. 2013). Only the third element is at issue here. Evidence of unlawful purpose generally requires "'affirmative steps... taken to encourage direct infringement'" Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd., 545 U.S. 913, 935 (2005) (quoting Kalem Co. v. Harper Brothers, 222 U.S. at 62-63 (1911)). Plaintiff has simply not alleged any such affirmative steps. At most, Plaintiff alleges, without any theory as to why Defendants would do so, that the Defendants intended for visitors to infringe copyright by downloading the LFOW Package onto their computers' RAM. A conclusory allegation that Defendants were "willful," (Doc. No. 16 ¶ 72), is the sort of "formulaic recitation" which Twombly and its progeny frown upon. As such, the Count III claim for inducement of copyright infringement is dismissed.

### F. Breach of Contract

Live Face also claims that Defendants breached the EULA. (Am. Compl., ¶ 76). Under Pennsylvania law[3], a plaintiff seeking to proceed with a breach of contract action must establish: (1)

---

[3] Article 13.1 of the EULA stipulates that "THE VALIDITY, INTERPRETATION AND LEGAL EFFECT OF THIS EULA SHALL BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH, THE LAWS OF THE COMMONWEALTH OF PENNSYLVANIA." (emphasis in original).

the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract, and (3) resultant damages.  <u>Ware v. Rodale Press, Inc.</u>, 322 F.3d 218, 225 (3d Cir. 2003) (alteration in original) (quoting <u>CoreStates Bank, N.A. v. Cutillo</u>, 720 A.2d 1053, 1058 (Pa. Super. Ct. 1999).  Insofar as Plaintiff has alleged that by licensing some thirteen customized versions of LFOW's subject software package, Defendants became bound by the terms of the EULA, that Defendants breached the terms and conditions of the EULA by, *inter alia*, using the subject software package on more than one and on unauthorized URLs, and by using them to violate the Fair Credit Reporting Act[4] and Section 5 of the Federal Trade Commission Act[5], we find that Plaintiff has adequately stated a claim for breach of contract. (Am. Compl., ¶s 23, 25, 28-30, 31, 35-38, 41-43).  We therefore deny the motion to dismiss Count IV of the Amended Complaint.

    For all of the reasons outlined above, the Defendants' motion to dismiss is granted in part and denied in part pursuant to the attached Order.

---

[4]  15 U.S.C. §§ 1681-1681x

[5]  15 U.S.C. § 45(a).